# Exhibit A

Electronically Filed by Superior Court of California, County of Orange, 01/29/2026 01:31:15 PM.
30-2026-01543831-CU-WT-CJC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By K. Climer, Deputy Clerk.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** CRASH CHAMPIONS, LLC, a Illinois corporation;
***(AVISO AL DEMANDADO):*** and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** AHMAD KAWARIT, an individual
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Orange
700 Civic Center Drive West
Santa Ana, California 92701

CASE NUMBER:
*(Número del Caso):*
30-2026-01543831-CU-WT-CJC
Judge Thomas S McConville

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Larry Herrera
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sessions & Kimball LLP
23456 Madero, Suite 170, Mission Viejo, CA 92691 (949) 380-0900

DATE: 01/29/2026 DAVID H. YAMASAKI, Clerk of the Court Clerk, by K. Climer, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*




**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Electronically Filed by Superior Court of California, County of Orange, 01/29/2026 01:31:15 PM.
30-2026-01543831-CU-WT-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By K. Climer, Deputy Clerk.

**SESSIONS & KIMBALL LLP**
Larry Herrera, State Bar No. 278315
23456 Madero, Suite 170
Mission Viejo, California 92691
Tel: (949) 380-0900
Fax: (949) 380-8283
Attorneys for Plaintiff
AHMAD KAWARIT

**Assigned for All Purposes**
Judge Thomas S McConville

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF ORANGE

AHMAD KAWARIT, an individual,

Plaintiff,

v.

CRASH CHAMPIONS, LLC, a Illinois corporation; and DOES 1-50, inclusive,

Defendants.

Case No: 30-2026-01543831-CU-WT-CJC

**COMPLAINT FOR:**

1) Whistleblower Retaliation (Labor Code §1102.5(b));
2) Defamation;
3) Failure to Pay Wages (Labor Code §204);
4) Unfair Business Practices (Business and Professions Code §17200)
5) Waiting Time Penalties (Labor Code §203)

**JURY TRIAL DEMANDED**

Plaintiff AHMAD KAWARIT hereby complains and alleges as follows:

**PRELIMINARY ALLEGATIONS**

1. The amount in controversy is in excess of the minimum jurisdiction of this court.

2. Plaintiff AHMAD KAWARIT ("KAWARIT") is an individual residing in the State of California, County of Los Angeles. In addition to his legal first name of Ahmad, KAWARIT uses the first name Sam.

3. Defendant CRASH CHAMPIONS, LLC. ("CC" or "DEFENDANT") is an Illinois corporation doing business in California.

4. KAWARIT was employed by CC in their Fountain Valley store, located in the County of Orange.

5. The true names and capacities of DEFENDANT DOES 1 through 50 inclusive, whether individual, corporate, associate, or otherwise, are unknown to KAWARIT, who

therefore sues such DEFENDANTS by fictitious names pursuant to Code of Civil Procedure § 474. KAWARIT will amend the Complaint to show their true names and capacities once they have been ascertained.

6. Defendants CC and DOES 1-50 are hereafter collectively referred to as DEFENDANTS.

7. KAWARIT is further informed and believes, and thereon alleges, that each of the fictitiously named DEFENDANT DOES is responsible in some manner for the occurrences herein alleged, and that KAWARIT's injuries and damages as alleged herein were proximately caused by their conduct.

8. KAWARIT is informed and believes, and thereon alleges, that DEFENDANTS, at all relevant times herein were the agents, employees, servants, joint venturers, alter egos, parents, subsidiaries, management companies, holding companies, directors, fiduciaries, representatives, and/or co-conspirators of each of the remaining DEFENDANTS. DEFENDANTS in doing the things hereinafter alleged, were acting within the course and scope of such relationships and are responsible in some manner for the occurrences herein alleged and, as a proximate cause, of KAWARIT's damages as herein alleged.

## FACTUAL BACKGROUND

9. KAWARIT started working for Crash Champions in 2021.

10. KAWARIT left his previous company to join CC as the General Manager of CC's Fountain Valley store. KAWARIT reported to Director of Operations (DO) Michael March at the time he was hired.

11. KAWARIT was tasked with increasing the Fountain Valley store's sales from $500,000 per month to $750,000. In KAWARIT's first month on the job, the store had sales of $985,000.

12. Michael March told KAWARIT during the interview process that he could drive the shop truck to and from his home for his work commute and for other job-related tasks. March confirmed this policy to KAWARIT after he was hired as well. KAWARIT drove the shop truck to and from his home countless times starting early in his employment.

13. KAWARIT never took steps to conceal from other CC employees that he was driving the shop truck to and from his home because he had permission to do so.

14. Another reason KAWARIT needed to drive the shop truck home was that parts delivered to the Fountain Valley store after hours were being stolen. This became a particular issue with CC's customer Hyundai, which is a major customer for CC. KAWARIT's home is more secure, so with the permission of his boss and the approval from Hyundai, KAWARIT had Hyundai's parts delivered to his home. However, KAWARIT drives a two-seat sports car and did not have room in his car to get the parts to the CC store. So, with March's permission, KAWARIT drove the shop truck to and from work to transport parts.

15. In 2023, CJ Storms replaced Michael March as the Fountain Valley store's Director of Operations. Storms and KAWARIT worked well together and put up great numbers at the Fountain Valley store for over a year.

16. In November 2024, CC moved Storms to a different store.

17. In November 2024, Jose Rosales became the DO for the FV store. Rosales had been the DO for the Los Angeles market, and now he was DO for Orange County as well. KAWARIT now reported to Rosales.

18. In Early 2025, KAWARIT noticed that Rosales showed favoritism for CC employee Diego Figueroa. Figueroa worked as the General Mansager of the Torrance store and KAWARIT noticed that Rosales showed favoritism to Figueroa. Rosales would talk about how long he had known Figueroa and that Figueroa was his "boy."

19. In late January 2025, KAWARIT came across evidence that Rosales and likely others were committing fraud against CC and its customers.

20. Rosales took a vacation and while on vacation he asked KAWARIT to use his login to log into CC's portal to close files for the store while he was away.

21. As KAWARIT was closing out files, he came across one file for a total loss vehicle for Figueroa's Torrance store that had taillights ordered. KAWARIT found it unusual that parts would be ordered for a car that was a total loss. KAWARIT saw that the company the taillights were purchased from is named Quality Auto Parts. KAWARIT then did a search and

saw that CC purchased numerous orders from Quality Auto Parts, but only on files that Rosales worked on and many of those files were still open.

22. Parts that were ordered from Quality Auto Parts were on jobs where the job was reopened after it had been closed, then left open so parts could be ordered for the jobs, which was not the normal was jobs were to move through CC's computer system the normal way. These jobs were for insurance customers where the insurance company was paying the bill as well as for individual customers where the individual was paying the bill.

23. In late January 2025, KAWARIT spoke with Rosales about the suspicious orders from Quality Auto Parts. KAWARIT was confused and suspicious, so he called Rosales on his vacation and asked him about the unusual purchases from Quality Auto Parts. Rosales sounded very unsettled when asked about the issue and quickly told KAWARIT to leave those files alone and Rosales would take care of them when he returned from his vacation.

24. Shortly after KWARIT's call to Rosales where he questioned Rosales about the orders to Quality Auto Parts, Rosales began treating KAWARIT differently. KAWARIT had developed a good relationship with Rosales in the few months they worked together, however, after KAWARIT questioned Rosales about the orders from Quality Auto Parts, the dynamic changed. Rosales spoke with KAWARIT much less, seemed to be keeping KAWARIT from accessing information, and did not include KAWARIT in the operation of the store as much as he had before.

25. In or around February 2025, CC hired a new Vice President named Trevor Horton.

26. On April 1, 2025, KAWARIT learned that CC's Vice President Trevor Horton was trying to find a reason to fire him. KAWARIT received a text message from his former DO CJ Storms informing him that VP Trevor Horton had contacted Storms and asked him if he had any information about KAWARIT that could warrant some type of discipline. Horton asked Storms about KAWARIT's use of the shop truck and asked for documentation regarding KAWARIT's performance.

27. To this point, given that Horton was so new, KAWARIT had very limited interactions with Horton.

28. On April 2, 2024, Rosales and Horton terminated KAWARIT. Horton started the meeting by telling KAWARIT that he was being fired for taking the shop truck home. KAWARIT told Horton that he had permission from his previous DO to take the shop truck home, that Rosales knew he had been taking the truck home and never said anything. KAWARIT asked why his use of the shop truck was an issue now and explained the issue with the parts being stolen.

29. KAWARIT explained all this to Horton and told him that many other GM's took the shop truck home with them, however Horton completely ignored KAWARIT's explanations and pushed forward with his absurd pretext for terminating KAWARIT.

30. CC told others within the company and outside the company that KAWARIT was terminated for unauthorized use of the shop truck even though they knew this was untrue and that KAWARIT had permission to drive the shop truck home.

31. In March 2025, KAWARIT's last month of employment, the FV store did $947,000 in sales, far exceeding goals.

32. KAWARIT was completely shocked after being terminated for such an absurd reason and spent days ruminating on his termination. KAWARIT could not help but go back to the unsettling call he had with Rosales in late January about the Quality Auto Parts orders and how their entire dynamic changed after that.

33. After doing some research and thinking about the issue, KAWARIT uncovered a massive fraud that Rosales was conducting, likely with the help of Figueroa and other CC employees.

34. Quality Auto Parts was an auto parts dealer that only existed on paper, and the company was owned and controlled by Rosales, Figueroa, and/or their associates. Rosales would reopen closed bills on cars that had been fixed by CC and would order parts from Quality Auto Parts. These cars did not need the parts ordered from Quality Auto Parts because the car was a total loss or the car's old parts were going to be put back on the car and not replaced. Rosales

would then generate an invoice on behalf of Quality Auto Parts and send it to CC, CC would then send a check to Quality Auto Parts, but Quality Auto Parts never sent the parts because the parts were never needed and Quality Auto Parts does not actually have the parts to send. Rosales would then never reclose the bill for the car, which would conceal the fraud.

35. CC then sent a check to Quality Auto Parts based on the fraudulent invoice, and Rosales and his criminal associates would ultimately receive the money from the checks to Quality Auto Parts.

36. KAWARIT realized that after he asked Rosales about the unusual billing for Quality Auto Parts, Rosales realized that KAWARIT had begun to uncover the massive fraud that was taking place and that he needed to terminate him before he could investigate more. Rosales terminated KAWARIT because KAWARIT complained to Rosales about his illegal activity and he knew KAWARIT would eventually disclose his fraudulent activity to others.

37. CC terminated KAWARIT because KAWARIT complained to Rosales about his fraud and knew that KAWARIT may further disclose the fraud that Rosales was engaging in.

38. The fraud Rosales engaged in harmed numerous CC customers, some of whom were insurance companies and some of whom were individuals. This harm came by way of paying for work and parts that was never done, having records that their cars have parts on them that are not actually on the car, which may void warranties, and in increased insurance costs as a result of repair bills being higher than they should be.

39. KAWARIT believes that these outside victims are unaware of the damages they have experienced.

40. Pursuant to Kawarit's employment contract, he was entitled to an annual bonus equal to up to 10% of his annual. This bonus was based upon the EBITDA financial performance of his store location, as well as the financial performance of his Market.

41. Pursuant to Kawarit's employment contract, he was entitled to a monthly incentive payment based upon his store location's EBITDA financial performance.

42. The annual bonus and monthly incentive pay was non-discretionary and specifically calculable based upon the terms of the employment contract and CC's financial

records.

43. Despite Kawarit's store and Market performing exceptionally and meeting the terms of annual bonus and monthly incentive pay, CC used deceptive accounting practices to deny paying Kawarit's annual bonus and monthly incentive.

**FIRST CAUSE OF ACTION**
**Whistleblower Retaliation**
**(Violations of Lab. Code §1102.5)**
**[Against CC and Defendant Does]**

44. KAWARIT realleges and hereby incorporates by reference the allegations of paragraphs 1 through 43, inclusive, with the same force and effect as if said paragraphs were fully set forth herein.

45. At all times material hereto, KAWARIT was an employee protected by Labor Code § 1102.5(b), which prohibits retaliating against an employee for disclosing unlawful behavior or who may disclose unlawful behavior.

46. At all times material hereto, DEFENDANTS were employers within the meaning of California Labor Code §1132.2., and as such were prohibited from engaging in whistleblower retaliation.

47. Rosales, who was KAWARIT's direct supervisor, had authority over KAWARIT and investigate his complaints, and Rosales knew that KAWARIT made complaints of fraudulent invoicing to him and may escalate his complaints to others within CC or others outside the company with authority to investigate fraud.

48. KAWARIT had reasonable cause to believe that the information he disclosed evidenced a violation of applicable laws.

49. DEFENDANTS retaliated against KAWARIT by terminating his employment after his complaints of violation of California law and in retaliation for Rosales' belief that KAWARIT may escalate his complaints to others within the company or to others outside the company who could investigate the fraud.

50. KAWARIT'S complaints and the belief that he may complain to others were a

substantial contributing factor in DEFENDANT's decision to terminate KAWARIT.

51. As a direct, foreseeable and proximate result of DEFENDANT's behavior, KAWARIT has suffered, and continues to suffer, substantial losses in past and future earnings, bonuses, deferred compensation and other employment benefits, all to KAWARIT's damage in an amount according to proof at trial.

52. As a further direct, foreseeable and proximate result of DEFENDANT's behaviors, KAWARIT has suffered and incurred, and is presently suffering and incurring, serious harm and damage to KAWARIT's personal and professional reputation and credibility all the KAWARIT's damage in an amount according to proof at trial.

53. As a result of further direct, foreseeable and proximate result of DEFENDANT' behaviors, KAWARIT has suffered, and continues to suffer, severe and lasting embarrassment, humiliation, mental anguish and emotional distress, and incidental and consequential damages and expenses, all to KAWARIT's damage in an amount according to proof at trial.

54. KAWARIT is informed and believes, and thereon alleges, that DEFENDANT committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure KAWARIT and that such improper motives amounted to malice and a conscious disregard of KAWARIT's rights as set forth herein. In doing the acts as herein alleged, the manager was acting pursuant to the authorization of DEFENDANT. An award of punitive damages against DEFENDANTS is therefore warranted.

55. As a result of the retaliatory conduct of DEFENDANTS', as alleged herein, KAWARIT is entitled to costs of suit, including reasonable attorney's fees, pursuant to Labor Code § 1102.5(j), in according to proof at trial.

## <u>SECOND CAUSE OF ACTION</u>
**Defamation**
**[Against CC and Defendant Does]**

56. KAWARIT realleges and hereby incorporates by reference the allegations of paragraphs 1 through 55, inclusive, with the KAWARIT force and effect as if said paragraphs

were fully set forth herein.

57. CC terminated KAWARIT, claiming that the reason for the termination was KAWARIT's unauthorized use of the shop truck for driving the shop truck to and from work.

58. CC told other employees within the company this pretextual reason for KAWARIT's termination and to others outside the company.

59. CC knew that KAWARIT had approval to drive the shop truck to and from work.

60. CC knew the reason they were telling others for KAWARIT's termination was untrue.

61. As a further direct, foreseeable and proximate result of DEFENDANT's behaviors, KAWARIT has suffered and incurred, and is presently suffering and incurring, serious harm and damage to KAWARIT's personal and professional reputation and credibility all the KAWARIT's damage in an amount according to proof at trial.

62. As a result of further direct, foreseeable and proximate result of DEFENDANT's behaviors, KAWARIT has suffered, and continues to suffer, severe and lasting embarrassment, humiliation, mental anguish and emotional distress, and incidental and consequential damages and expenses, all to KAWARIT's damage in an amount according to proof at trial.

63. KAWARIT is informed and believes, and thereon alleges, that DEFENDANT committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure KAWARIT and that such improper motives amounted to malice and a conscious disregard of KAWARIT's rights as set forth herein. In doing the acts as herein alleged, the manager was acting pursuant to the authorization of DEFENDANT. An award of punitive damages against DEFENDANT is therefore warranted.

64. As a result of the retaliatory conduct of DEFENDANT's and DEFENDANT DOES and each of them, as alleged herein, KAWARIT is entitled to costs of suit, including reasonable attorney's fees, pursuant to Labor Code § 1021.5, in according to proof at trial.

//

//

//

**THIRD CAUSE OF ACTION**
**Failure to Pay Wages**
**[Labor Code §204]**
**[Against CC and Defendant Does]**

65. KAWARIT repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference as though fully set forth herein.

66. At all times material hereto, KAWARIT was an employee of CC AND DOE DEFENDANTS.

67. Under California Labor Code §204, bonuses and incentive pay must be paid no later than the payday for the next regular pay period.

68. Kawarit's store and Market performed well enough for Kawarit to receive his annual bonus and monthly incentive, however CC never paid these bonuses and incentive pay.

69. As a result of CC AND DOE DEFENDANTS' unlawful conduct, KAWARIT is entitled to attorney fees and costs pursuant to Labor Code §218.5.

70. KAWARIT requests that the Court award her interest on all due and unpaid wages, at the legal rate specified by Civil Code § 3289(b), accruing from the date the wages were first due and payable.

**FOURTH CAUSE OF ACTION**
**Unfair Business Practices**
**(Violation of Bus. & Prof. Code §17200)**
**[Against All CC and DOE Defendants]**

71. PLAINTIFF repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference as though fully set forth herein.

72. DEFENDANTS have engaged in business acts or practices that are unlawful, unfair, or fraudulent, such as misleading KAWARIT regarding the company's financial performance and/or engaging in misleading accounting practices with the intent of ensuring that the terms of KAWARIT's annual bonus and monthly incentive terms were not met.

73. KAWARIT was harmed by CC's deceptive and unfair business practices, and DEFENDANTS' competitors are likely to be unfairly disadvantaged by DEFENDANTS' business acts and practices. The harm to PLAINTIFF and/or to DEFENDANTS' competitors

outweighs the utility of DEFENDANTS' business acts and practices.

74. As a direct, foreseeable, and proximate result of DEFENDANTS' actions, DEFENDANT received ill-gotten gains from their conduct.

75. PLAINTIFF has suffered a loss of wages, benefits, and other damages because of DEFENDANTS' conduct.

76. PLAINTIFF thus seeks restitution in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION
**Waiting Time Penalties**
**(Violation of Lab. Code §203)**
**[Against All CC and DOE Defendants]**

77. KAWARIT repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference as though fully set forth herein.

78. CC AND DOE DEFENDANTS failed to pay KAWARIT all wages that she was owed upon the termination of her employment.

79. Pursuant to Labor Code sections 201, KAWARIT was entitled to receive, upon discharge, all wages earned and unpaid immediately at the time of discharge or termination.

80. CC AND DOE DEFENDANTS failed to pay KAWARIT all wages earned and unpaid at the time of discharge in accordance with Labor Code section 201. This failure included unpaid wages, and unpaid meal break penalties, as identified above.

81. CC AND DOE DEFENDANTS'S failure to pay KAWARIT all wages earned at the time of discharge in accordance with the Labor Code section 201 was willful. CC AND DOE DEFENDANTS had the ability to pay all wages earned by KAWARIT at the time of discharge in accordance with Labor Code Sections 201 but intentionally followed a practice or adopted a policy that violated Labor Code Sections 201.

82. California Labor Code section 203 provides that any employer who willfully fails to pay any wages due to a discharged employee in the prescribed time frame may be assessed a waiting time penalty. The waiting time penalty is an amount equal to the employee's daily rate of pay for each day and the wages remain unpaid, up to a maximum of thirty (30) calendar days.

83. KAWARIT requests the maximum waiting time penalty of thirty days wages pursuant to Labor Code Section 203, as well as costs of suit and interest pursuant to Civil Code Section 3336.

84. KAWARIT requests all attorney fees and costs incurred by her in this action under Labor Code §218.5.

## PRAYER FOR RELIEF

WHEREFORE, KAWARIT demands judgment against DEFENDANTS and DEFENDANT DOES, and their agents and employees as follows:

1. Actual damages, including loss of past earnings, bonuses, deferred compensation, and other employment benefits in an amount according to proof at time of trial;

2. General and special damages, including, but not limited to, pain and suffering, emotional distress, loss of reputation and medical expenses, in an amount according to proof at time of trial;

3. Consequential and incidental damages and expenses, in an amount according to proof at time of trial;

4. Pre-judgment and post-judgment interest, at the prevailing legal rate;

5. As to the First Cause of Action, for attorney fees and costs pursuant to Labor Code §1102.5(j);

6. As to the Second Cause of Action, for attorney fees and costs pursuant to Code of Civil Procedure §1021.5.

7. As to the Third and Fifth Causes of Action, for attorney fees and costs pursuant to Labor Code §218.5.

8. As to the First, Second, and Fourth Cause of Action, for punitive damages in an amount appropriate to punish DEFENDANTS for their wrongful conduct and set an example for others;

//

//

9. For costs of suit incurred herein; and

10. For such other and further relief as the Court may deem just, proper and equitable.

DATED: January 29, 2026 SESSIONS & KIMBALL LLP

By: ______________________
LARRY HERRERA
Attorneys for plaintiff
AHMAD KAWARIT

**JURY TRIAL DEMAND**

Plaintiff AHMAD KAWARIT hereby makes a demand for her constitutional right to trial by jury for all triable issues in the above–titled action.

DATED: January 29, 2026 SESSIONS & KIMBALL LLP

By: ______________________
LARRY HERRERA
Attorneys for plaintiff
AHMAD KAWARIT

Electronically Filed by Superior Court of California, County of Orange, 02/03/2026 11:11:00 AM.
30-2026-01543831-CU-WT-CJC - ROA # 8 - DAVID H. YAMASAKI, Clerk of the Court By A. Burton, Deputy Clerk.

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY STATE BAR NUMBER: 278315
NAME: Larry Herrera
FIRM NAME: Sessions & Kimball LLP
STREET ADDRESS: 23456 Madero, Suite 170
CITY: Mission Viejo STATE: CA ZIP CODE: 92691
TELEPHONE NO.: (949) 380-0900 FAX NO.: (949) 380-8283
EMAIL ADDRESS: leh@job-law.com
ATTORNEY FOR (name): Ahmad Kawarit

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

CASE NAME: Kawarit v. Crash Champions

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: 30-2026-01543831-CU-WT-CJC |
|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $35,000) | [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Assigned for All Purposes<br>DEPT.: Judge Thomas S McConville |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Asbestos**
- [ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/Unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [X] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Employment Development Department (EDD)**
- [ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Comprehensive groundwater adjudication (47)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

CM-010

2. Is this case complex under rule 3.400 of the California Rules of Court? [ ] Yes [X] No
If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):*
   a. [X] monetary
   b. [ ] nonmonetary; declaratory or injunctive relief
   c. [X] punitive
4. Number of causes of action *(specify):* 5
5. Is this case a class action suit? [ ] Yes [X] No
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 29, 2026

Larry Herrera
(TYPE OR PRINT NAME)

▶ ______________________
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Asbestos**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collections Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition re Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Employment Development Department (EDD)**
- EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Comprehensive Groundwater Adjudication (47)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister-State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
  - Mechanic's Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition